Eliot Lauer
Theresa A. Foudy
Daniel R. Marcus
CURTIS, MALLET-PREVOST,
     COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

ERNEST GOTTDIENER, Derivatively and on
Behalf on Nominal Defendant TARRAGON
CORPORATION,

                         Plaintiff,

      v.

WILLIAM S. FRIEDMAN, ROBERT P.
ROTHENBERG, WILLIE K. DAVIS, LANCE
LIEBMAN, LAWRENCE G. SCHAFRAN, V.J.
SCHRAG, CARL B. WEISBROD, RICHARD S.
FRARY, MARTHA E. STARK, ROBERT C.
ROHDIE, and ERIN DAVIS PICKENS,

                    Defendants,

      and

TARRAGON CORPORATION,

                    Nominal Defendant.

---------------------------------------------------------X

Civil Action No.
07 Civ. 9436 (PKC)

<u>Oral Argument Requested</u>

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS THE AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

## TABLE OF CONTENTS

PAGE #

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

ARGUMENT ...................................................................................................... 7

I.     THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE
       TO MEET THE REQUIREMENTS OF FED. R. CIV. P. 23.1 ......................... 7

       A.     Nevada Law Follows Delaware Law In Setting A High
              Standard For Excusing Pre-Suit Demand
              On A Corporation's Board of Directors ........................................... 7

       B.     Plaintiff Has Failed To Aver Particularized Facts That
              Would Satisfy The Demand Futility Pleading Standard ................. 9

              1.     The Amended Complaint's Conclusory And Generic Failure-
                     Of-Oversight Allegations Fail To Plead Particularized Facts
                     Showing The Required Substantial Likelihood Of Liability ............ 10

              2.     The Amended Complaint's Allegations Directed At Individual
                     Directors Are Likewise Insufficient ................................................... 13

                     a.     Plaintiff's Allegations Regarding Committee
                            Membership Fail To Show Interestedness .............................. 14

                     b.     Plaintiff's Allegations Regarding Stock Sales And Other
                            Miscellaneous Allegations Of Financial Interest Do
                            Not Establish Demand Futility ................................................ 16

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ...................... 20

       A.     Plaintiff Fails To State A Claim For Breach of Fiduciary Duty ................. 20

       B.     Plaintiff Fails To State A Claim For Insider Trading ............................... 22

       C.     Plaintiff Fails To State A Claim For Contribution ................................. 23

## <u>TABLE OF CONTENTS (cont'd)</u>

D.     The Amended Complaint Should Be
Dismissed Because It Is Not Ripe.................................................................24

**CONCLUSION** .......................................................................................................................25

# TABLE OF AUTHORITIES

**PAGE #**

## CASES

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995)...............................................................24

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,
    No. 92 Civ. 6879 (CSH), 1998 U.S. Dist. LEXIS 14766 (S.D.N.Y. Sept. 22, 1998)
                                                                ...............23

Amalgamated Bank v. Yost,
    No. 04-0972 (WHY), 2005 U.S. Dist. LEXIS 1280 (E.D. Pa. Jan. 31, 2005)..............24

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984).........................................................8, 10

ATSI Comms., Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007).........................................................24

Berman v. Riverside Casino Corp.,
    247 F. Supp. 243 (D. Nev. 1964)....................................................7

Caremark Int'l Derivative Litig.,
    698 A.2d 959 (Del. Ch. 1996)................................................11-13, 21

Caruana v. Saligman,
    1990 Del. Ch. LEXIS 210 (Del. Ch. Dec. 21, 1990)...................................10

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984)................................................................7

Decker v. Clausen,
    No. 10,684, 10,685, 1989 Del. Ch. LEXIS 143 (Del. Ch. Nov. 6, 1989)...................10

Ferre v. McGrath,
    No. 06 Civ. 1684 (CM), 2007 U.S. Dist. LEXIS 29490 (S.D.N.Y. Feb. 16, 2007)
                                                            ...........9-12, 14, 17

Fink v. Weill,
    No. 02 Civ. 10250 (LTS), 2005 U.S. Dist. LEXIS 20659 (S.D.N.Y. Sept. 19, 2005)
                                                                .........9, 16

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003)..............................................8, 12-15, 17, 19, 21

Halpert Enters. Inc. v. Harrison,
    362 F. Supp. 2d 426 (S.D.N.Y. 2005)……….…………………...………….…..10, 13

In re Computer Sciences Corp. Derivative Litig.,
    244 F.R.D. 580 (C.D. Cal. 2007)……….…………………...…………….…....14

In re Cray Inc. Derivative Litig.,
    431 F. Supp. 2d 1114 (W.D. Wash. 2006)……….…………….…...…….…...25

In re Discovery Labs. Derivative Litig.,
    242 F.R.D. 333 (E.D. Pa. 2007)……….………….…...………………...…….....13

In re IAC/Interactivecorp Sec. Litig.,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007)……...……….……………….…4, 7-10, 12, 17, 21

In re MTC Elec. Techs. Shareholders Litig,
    No. 93-CV-876, M.D.L. 1059, 1998 U.S. Dist. LEXIS 23502 (E.D.N.Y. Feb. 9, 1998)
    ………….……23

In re Oracle Corp. Derivative Litig.,
    867 A.2d 904, 955 (Del. Ch. 2004)……….……………….…...…………...…….22

In re Pozen Shareholders Litig.,
    Nos. 04 CVS 1540, 04 CVS 1542, 2005 NCBC LEXIS 7 (N.C. Sup. Ct. Nov. 11, 2005)
    ………….……15

In re Sagent Tech. Inc. Derivative Litig.,
    278 F. Supp.2d. 1079 (N.D. Cal. 2003)………………….……………...……………17

In re Symbol Techs. Sec. Litig.,
    762 F. Supp. 510 (E.D.N.Y. 1991)………….…………………….…...…………….25

In re United Telecomm., Inc. Sec. Litig.,
    No. 90-2251-EEO, 1993 U.S. Dist. LEXIS 4749 (D. Kan. Mar. 4, 1993)………………25

In re Xethanol Corp. Derivative Litig.,
    No. 06 Civ. 15536 (HB), 2007 U.S. Dist. LEXIS 60082 (S.D.N.Y. Aug. 16, 2007)
    ………….8, 10

Jones v. Jenkins,
    503 F. Supp. 2d 1325 (D. Ariz. 2007)…………...….………………….4, 8, 12, 14, 16-18

Kaltman v. Sidhu,
    No. 3:03-cv-1057-H, 2004 U.S. Dist. LEXIS 2818 (N.D. Tex. Feb 26, 2004)…………12

Kamen v. Kemper Fin. Servs., Inc.,
 500 U.S. 90 (1991)..................................................................................7

Loveman v. Lauder,
 484 F. Supp. 2d 259 (S.D.N.Y. 2007)..............................................4

McCall v. Scott,
 239 F.3d 808, 825, amended in other parts, 250 F.3d 997 (6th Cir. 2001).................17

Musick, Peeler & Garrett v. Employers Ins. Of Wausau,
 508 U.S. 286 (1993)................................................................................23

Pall v. KPMG,
 No. 3:03-00842 (AWT), 2006 U.S. Dist. LEXIS 71821 (D. Conn. Sept. 29, 2006).......25

Prod. Res. Group, L.L.C. v. NCT Group, Inc.,
 863 A.2d 772 (Del. Ch. 2004)...............................................................21

Rales v. Blasband,
 634 A.2d 927 (Del. 1993)......................................................................8, 9

Rattner v. Bidzos,
 No. Civ. A. 19700, 2003 Del. Ch. LEXIS 103 (Del. Ch. Sept. 30 2003)...............14, 18

Rothman v. Gregor,
 220 F.3d 81 (2d Cir. 2000)....................................................................4, 24

Seminaris v. Landa,
 662 A.2d 1350 (Del. Ch. 1995).............................................................8-10, 12

Shoen v. SAC Holding Corp.,
 137 P.3d 1171 (Nev. 2006).............................................................7, 8, 10, 11, 20

Steed Fin. LDC v. Laser Advisers, Inc.,
 258 F. Supp. 2d 272 (S.D.N.Y. 2003).....................................................23

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
 127 S.Ct. 2499 (2007)...........................................................................23

Tepper v. Bendell,
 No. 01 Civ. 6226 (SWK), 2002 U.S. Dist. LEXIS 23303 (S.D.N.Y. Dec. 5, 2002).......20

## RULES and STATUTES

15 U.S.C. § 78u-4(b) ……………………….…………………………………………………………………...3

Fed. R. Civ. P. 9(b)……………………….……………………………………………………...…...3, 5

Fed. R. Civ. P. 12(b)(6)…………………….……………………………………………………………...1, 5

Fed. R. Civ. P. 23.1………………………………..…...…………………………1, 2, 7, 9, 10, 20

NEV. REV. STAT. § 78.138 (2007)………………….…..………………...……….....2, 10, 11, 20, 22

NEV. REV. STAT. § 78.120(1) (2007)…………….……...………………………………………...7

NEV. REV. STAT. § 41.520(2)…………….……..…………………………………………………..8

Defendants respectfully submit this memorandum of law in support of their motion to dismiss the Amended Stockholder's Derivative Complaint ( "Amended Complaint") pursuant to Fed. R. Civ. P. 23.1 for lack of verification and failure to plead demand futility as required by Nevada law, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

This is a tag-along derivative action to the class action securities fraud complaint ("Securities Complaint") filed against Tarragon Corporation ("Tarragon" or the "Company") and three of its officers in the wake of its August 9, 2007 announcement that it was "experiencing liquidity issues caused by the sudden and rapid deterioration in the real estate credit markets."  Shareholder Ernest Gottdiener ("Plaintiff") piggy-backs on the conclusory allegations of the Securities Complaint to claim that Tarragon's entire nine-member board (Defendants Friedman, Rothenberg, Davis, Liebman, Schafran, Schrag, Weisbrod, Frary, and Stark (the "Director Defendants")), one non-director officer (Defendant Pickens), and one former officer and director (Defendant Rohdie) should be liable to the Company for breach of fiduciary duty for failing to prevent the purported securities fraud and insider trading, and for contribution if the Company is found liable for securities fraud.  However, Plaintiff pleads no facts showing that there ever was a securities fraud in the first instance, let alone that Defendants were in any way culpable for its occurrence.

The Amended Complaint should be dismissed for two independent reasons.

## I.    Plaintiff Did Not Meet The Verification Or Pre-Suit Demand Requirements

First, Plaintiff did not meet the requirements of Fed. R. Civ. P. 23.1.  He did not verify the Amended Complaint.  Nor did he make a pre-suit demand on Tarragon's board.  Under Nevada law and Fed. R. Civ. P. 23.1, a shareholder seeking to prosecute a derivative

action must first demand action from the board or plead with particularity why demand would have been futile. Here, Plaintiff contends that demand would have been futile because all nine directors face personal liability on his allegations. However, under Nevada law and Rule 23.1, a "mere threat" of personal liability is not sufficient to show that a director is incapable of considering a demand; rather, Plaintiff must plead particularized facts supporting that a majority of the directors face a *"substantial likelihood of liability"* before demand will be excused. In addition, under Nevada Law, officers and directors cannot be found liable for a breach of fiduciary duty unless it involved *"intentional misconduct, fraud or a knowing violation of law."* Nev. Rev. Stat. § 78.138 (emphasis added). Plaintiff's conclusory allegations that the Defendants must have exercised inadequate oversight in light of the allegations in the Securities Complaint do not raise a "substantial likelihood of liability" for "intentional misconduct, fraud or a knowing violation of law." Plaintiff has thus failed to adequately plead demand futility.

## II. <u>The Amended Complaint's Allegations Fail To State A Claim As A Matter Of Law</u>

**Second**, Plaintiff's allegations fail to state a claim as a matter of law.

### A. The Amended Complaint Does Not State A Viable Claim For Breach Of <u>Fiduciary Duty Under Nevada Law</u>

As noted, Nevada officers and directors can be liable only for breaches of fiduciary duty involving "intentional misconduct, fraud or a knowing violation of law." Plaintiff's factual allegations come nowhere near that standard. Indeed, the Amended Complaint contains no details as to how each director was supposedly aware of the alleged securities fraud, or what each director purportedly should have done to identify or prevent it. Moreover, while Plaintiff asserts in a conclusory manner that Defendants sold stock while in possession of material, non-public information, he does not support that allegation with the facts necessary to state such a claim. Thus, Plaintiff fails to state a claim for breach of fiduciary duty.

**B.**     <u>The Amended Complaint Does Not Properly Plead A Contribution Claim</u>

As for Plaintiff's attempt to assert a contribution claim for any liability under section 10(b) of the Securities Exchange Act of 1934 ("section 10(b)") which Tarragon may incur as a result of the Securities Complaint, Tarragon could recover contribution only from those jointly liable for the section 10(b) violation.  But, the Amended Complaint fails to plead that Defendants would be liable under the Securities Complaint.  It does not meet the heightened standards for pleading securities fraud under Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA").  Plaintiff thus fails to state a contribution claim.

**C.**     <u>Plaintiff's Claims Are Not Ripe</u>

Finally, Plaintiff's claims are not ripe, because his damages theory – that the Company was harmed by the institution of the Securities Complaint – is entirely speculative.

Accordingly, the Amended Complaint should be dismissed.

## <u>STATEMENT OF FACTS</u>

**I.**     <u>Company Background</u>

Tarragon is a Nevada corporation (Am. Compl. ¶ 3).[1]  It engages in homebuilding, and real estate development and services. (<u>Id.</u>).  As of December 31, 2006, Tarragon had 35 rental communities with 4,560 homes or home sites in inventory or development in six states; and approximately 14,600 apartments in twelve states. (<u>Id.</u> ¶ 4).

---

[1] The Amended Complaint is attached as Exhibit A to the Declaration of Theresa A. Foudy in Support of Defendants' Motion to Dismiss Amended Shareholder Derivative Complaint, dated Mar. 7, 2008 ("Foudy Decl.").

## II.    Tarragon's August 9, 2007 Announcement

On August 9, 2007, the Company announced that it was "experiencing liquidity issues caused by the sudden and rapid deterioration in the real estate credit markets." (Foudy Decl., Exh. B (Aug. 9, 2007 Press Release)).[2]  As a result, the Company delayed filing its second quarter 10-Q "to provide for additional time . . . to finalize its evaluation of property impairment charges and other write-downs necessitated by the recent decision to sell certain properties under current adverse market conditions." (Id.)  The Company further explained:

> Tarragon's business has been adversely affected by the continuing and accelerated deterioration of the homebuilding industry in the markets in which Tarragon operates, and in the Florida market in particular.  These conditions have led to declines in new home sales, increased use of sales discounts and other incentives and increased interest and other carrying costs, and have adversely affected Tarragon's gross margins from homebuilding sales as well as its overall liquidity situation. . . .
>
> These factors, combined with the inability to obtain anticipated loan modifications and additional financing, have materially affected Tarragon's liquidity . . . and raise doubt about Tarragon's ability to continue as a going concern.

(Id.).

## III.    Plaintiff's Allegations

Within two months of the August 9 announcement, shareholders filed putative securities class actions against Tarragon; its CEO and Chairman, Defendant Friedman; President and director, Defendant Rothenberg; and CFO, Defendant Pickens ("Securities

---

[2] In ruling upon a motion to dismiss, the Court may consider press releases relied upon in a complaint, as well as public disclosure documents filed with the SEC.  See Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000); Jones v. Jenkins, 503 F. Supp. 2d 1325, 1339 (D. Ariz. 2007); Loveman v. Lauder, 484 F. Supp. 2d 259, 268 (S.D.N.Y. 2007); see also In re IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d 574, 585 (S.D.N.Y. 2007).

Defendants"). The Court consolidated the actions as *In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972 ("Securities Litigation"), and appointed a lead plaintiff (the "Securities Plaintiffs").[3]

Plaintiff filed this derivative action purportedly on behalf of Tarragon in October 2007 and amended it on March 4, 2008. Plaintiff alleges that the nine Director Defendants, and two non-director Defendants, breached their fiduciary duties by allegedly failing to prevent the purported securities fraud and by engaging in insider trading, and that they should be liable for contribution if the Company is found liable to the Securities Plaintiffs. However, the Amended Complaint contains no facts to support the conclusory claim that any fraud actually occurred, let alone that the Defendants knew of it or acted in bad faith in failing to prevent it.

Instead, Plaintiff alleges that all of Tarragon's financial statements from year-end 2004 to Tarragon's August 9, 2007 announcement were false and misleading, because they failed to disclose that the Company lacked adequate internal controls and failed to comply with Generally Accepted Accounting Principles to the extent that they did not consolidate Ansonia, L.P., a limited partnership Tarragon had formed to make certain real estate investments ("Ansonia"), and misclassified items in the cash flow statements. (Am. Compl. ¶¶ 60, 72, 81). But, Plaintiff's only alleged support is Tarragon's own public statements to the effect that management and the audit committee had decided on restatements following internal reviews (id., ¶¶ 61, 73),[4] and a report that the Public Company Accounting Oversight Board criticized

---

[3] The Securities Defendants intend to file a motion to dismiss the Securities Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and failure to meet the heightened requirements for pleading fraud of the PSLRA and Fed. R. Civ. P. 9(b).

[4] Specifically, on August 23, 2006, Tarragon announced that it would restate its financial results for 2004 and 2005 and for the first quarter of 2006 to consolidate Ansonia, "as a result of a review of the accounting for the investment in Ansonia by management and the Company's independent accountants." (Foudy Decl., Exh. C (Aug. 23, 2006 Form 8-K)). On April 2, 2007, the Company announced that it had decided to restate its consolidated statements of cash flows for 2004 and 2005 to reclassify certain items among operating, investing and financing activities, after reviewing the statements of cash flows and applicable accounting standards and the presentation of other companies ." (Foudy Decl., Exh. D (Apr. 2, 2007 Form 8-K)).

Tarragon's auditor, Grant Thornton LLP, for failing to identify an accounting error. (Id. ¶ 83). None of those statements attribute any knowledge to the Director Defendants that there were any issues with the original financial statements at the time they were filed.

Plaintiff further alleges that the Company: (i) failed to timely take impairment charges; (ii) improperly used the percentage-of-completion method in recognizing revenue; (iii) failed to disclose liquidity issues; (iv) was no longer in compliance with certain debt covenants by June 30, 2007; and (v) made statements about its 2007 results lacked a reasonable basis. (Id. ¶ 72, 81). Plaintiff's only alleged support for any of these allegations, however, are Tarragon's own August 9, 2007 announcement and its subsequently released quarterly financial statements. (See id. ¶¶ 85, 91, 92). Those statements reflect only that Tarragon's business and liquidity were being increasingly negatively impacted by the economic crises in the real estate and mortgage industries. They contain nothing from which any inference of fraud can be raised.

Plaintiff forwards no particularized allegations that any Defendant had knowledge of misstatements or omissions in Tarragon's financial statements. Instead, Plaintiff avers that, because each was an executive officer and/or director, he or she was "privy to non-public information concerning its business" and "knew or recklessly disregarded the fact that adverse facts specified [in the Amended Complaint] had not been disclosed." (Id. ¶ 26). Plaintiff admits that he did not make a demand on the board before filing suit, but claims that such demand would have been futile because he brings claims against all nine directors.

## IV.   Tarragon's Board Of Directors

At the time the Amended Complaint was filed, Tarragon had a nine-member board. (Am. Compl. ¶ 15, 23). With the exceptions of Defendant Friedman, Tarragon's CEO, and Defendant Rothenberg, Tarragon's President, none of the following seven directors is an

employee of the Company:  Defendants Davis, Frary, Liebman, Schafran, Stark, Schrag, and

Weisbrod.  Nor are any of these seven directors a Securities Defendant.  Thus, a majority of the

board indisputably consists of outside disinterested directors.

## ARGUMENT

### I.    THE AMENDED COMPLAINT MUST BE DISMISSED FOR FAILURE TO MEET THE REQUIREMENTS OF FED. R. CIV. P. 23.1

To begin, under Rule 23.1, a derivative complaint must be verified.  See Fed. R.

Civ. P. 23.1.  Since the Amended Complaint is not, it should be dismissed.

In addition, Plaintiff concedes his failure to make a pre-suit demand, but claims

that demand would have been futile.  (See Am. Compl. ¶ 120).  To survive a motion to dismiss,

however, the Amended Complaint must allege particularized facts showing that at least five of

Tarragon's nine directors could not have responded to a demand in a disinterested manner.  The

Amended Complaint's generic, conclusory allegations fail to meet this high standard.

### A.    Nevada Law Follows Delaware Law In Setting A High Standard For Excusing Pre-Suit Demand On A Corporation's Board Of Directors

Under Nevada law,[5] a corporation's "board of directors has full control over the

affairs of the corporation."  Nev. Rev. Stat. § 78.120(1); see also Berman v. Riverside Casino

Corp., 247 F. Supp. 243, 245 (D. Nev. 1964); Shoen v. SAC Holding Corp., 137 P.3d 1171,

1178 (Nev. 2006).  "In managing the corporation's affairs, the board of directors may generally

decide whether to take legal action on the corporation's behalf."  Shoen, 137 P.3d at 1179; see

also Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 530 (1984).  Therefore, before permitting a

---

[5] A corporation's state of incorporation provides the substantive law on the requirements for a pre-suit demand. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991); In re IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d at 598.

derivative suit, Nevada requires a shareholder to make a board demand or to state the reasons for failing to do so with particularity.  See Nev. Rev. Stat. § 41.520(2); Shoen, 137 P.3d at 1179.

Nevada courts, adopting Delaware law, employ two alternative demand futility tests.  See Shoen, 137 P.3d at 1182-85.  The Aronson test applies where the lawsuit challenges a specific business decision made by the board.  Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984).  The Rales test applies where the challenged conduct did not constitute a particular business decision.  Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993).

Here, because Plaintiff does not challenge a particular board decision, the Rales standard applies.  See Jones v. Jenkins, 503 F. Supp. 2d 1325, 1332 n.3 (D Ariz. 2007) (Rales test applied to allegations that directors responsible for accounting errors and engaged in insider trading); Shoen, 137 P.3d at 1184-85 (Rales test applied to allegations that board should have known of challenged acts and failed to prevent the wrongs); see also Guttman v. Huang, 823 A.2d 492, 499-500 (Del. Ch. 2003); Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995). "The Rales test inquires whether the complaint's particularized facts show that the board is incapable of impartially considering a demand – i.e., that a majority of the board is interested in the decision to act on the demand or dependent on someone who is interested in that decision." Shoen, 137 P.3d at 1185; see also In re Xethanol Corp. Derivative Litig., No. 06 Civ. 15536 (HB), 2007 U.S. Dist. LEXIS 60082, at *13 (S.D.N.Y. Aug. 16, 2007); In re IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d 574, 598 (S.D.N.Y. 2007).  "To show interestedness, a shareholder must allege that a majority of the board members would be 'materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.'"  Shoen, 137 P.3d at 1183.

Under Fed. R. Civ. P. 23.1, a derivative complaint must allege "with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ. P. 23.1; see also IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d at 597; Ferre v. McGrath, No. 06 Civ. 1684 (CM), 2007 U.S. Dist. LEXIS 29490, at *7-8 (S.D.N.Y. Feb. 16, 2007). It is thus a plaintiff's burden – at the pleading stage – to demonstrate with specificity that demand is excused, by pleading "particularized factual allegations" raising a reasonable doubt that a majority of the board is disinterested or independent. Rales, 634 A.2d at 934; see also IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d at 598. Conclusory factual or legal allegations not substantiated with specific facts are insufficient to meet this burden. See Ferre, 2007 U.S. Dist. LEXIS 29490, at *10.

Applying these standards, the Amended Complaint must be dismissed, because Plaintiff pleads no particularized facts that would show that the majority of the board was interested and incapable of impartially considering a demand.

**B.    Plaintiff Has Failed To Aver Particularized Facts That Would Satisfy The Demand Futility Pleading Standard**

Plaintiff asserts that demand should be excused because all nine directors are accused by him of breach of fiduciary duty, two directors are Securities Defendants, and the directors thus "could not be relied upon to reach a truly independent decision as to whether to commence an action against themselves." (Am. Compl. ¶ 120(c)). However, "[t]he rote allegation that directors would have to sue themselves has been consistently rejected as a basis for excusing demand." Ferre, 2007 U.S. Dist. LEXIS 29490, at *20; see also Fink v. Weill, No. 02 Civ. 10250 (LTS), 2005 U.S. Dist. LEXIS 20659, at *14 (S.D.N.Y. Sept. 19, 2005); Seminaris, 662 A.2d at 1355 (finding demand not futile, noting the "'discredited refrain – you

can't expect directors to sue themselves"); <u>Aronson</u>, 473 A.2d at 818 (acceptance of incantation that directors would have to sue themselves would abrogate Rule 23.1 and weaken managerial powers of directors).

   Likewise, because the allegation is but a "variation[] on the 'directors suing themselves,'" <u>Decker v. Clausen</u>, No. 10,684, 10,685, 1989 Del. Ch. LEXIS 143, at *8 (Del. Ch. Nov. 6, 1989), courts have repeatedly rejected the argument, contained in paragraph 87 of the Amended Complaint, that demand is futile because any directors and officers' liability insurance likely excludes coverage were the Company to file suit.  <u>See</u> <u>Ferre</u>, 2007 U.S. Dist. LEXIS 29490, at *22 ("The existence of a so-called 'insured versus insured' exclusion in [the company's] D & O Policy likewise fails to establish director interest."); <u>see also</u> <u>Halpert Enters. Inc. v. Harrison</u>, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005); <u>Caruana v. Saligman</u>, 1990 Del. Ch. LEXIS 210, at *11 (Del. Ch. Dec. 21, 1990).

   In addition, "the 'mere threat' of personal liability is not a disabling interest." <u>IAC/Interactivecorp Sec. Litig.</u>, 478 F. Supp. 2d at 599.  Instead, "interested because of potential liability can be shown only in those 'rare case[s] . . . where defendants' actions were so egregious that a substantial likelihood of director liability exists.'" <u>Shoen</u>, 137 P.3d at 1183-84 (quoting <u>Seminaris</u>, 662 A.2d at 1354); <u>see also</u> <u>Xethanol Corp. Derivative Litig.</u>, 2007 WL 2331975, at *4; <u>Ferre</u>, 2007 WL 1180650, at *4.  The Amended Complaint is devoid of any allegations that would show the required "substantial likelihood" here.

  **1.**  **The Amended Complaint's Conclusory And Generic Failure-Of-Oversight Allegations Fail To Plead Particularized Facts Showing The Required Substantial Likelihood Of Liability**

   Plaintiff asserts in a conclusory manner that Tarragon's directors "face a substantial likelihood of liability." (Am. Compl. ¶ 133).  However, under Section 78.138 of the

Nevada Revised Statutes, directors and officers may be found personally liable only for a breach of fiduciary duty that involved "intentional misconduct, fraud, or a knowing violation of law." Nev. Rev. Stat. § 78.138 (2007); see also Shoen, 137 P.3d at 1184. Here, because Plaintiff does not plead particularized facts demonstrating that Tarragon's directors engaged in intentional misconduct, he fails to show that they were incapable of considering a demand.

Plaintiff's theory of liability against the directors as a group is based on an alleged failure of oversight -- that the directors allegedly "fail[ed] to put into place adequate internal controls and adequate means of supervision" (Am. Compl. ¶ 120(a)); and that "[i]nstead of ensuring that effective compliance reporting and corrective action was built into Tarragon's system of internal controls, by their reckless disregard of known risks, the Individual Defendants instead allowed a culture to persist at Tarragon that placed profits before fiduciary duties." (Id. ¶ 130). It is difficult to imagine how such a failure-of-oversight claim could ever meet the Nevada statutory requirement of "intentional misconduct, fraud, or a knowing violation of law." Nev. Rev. Stat. § 78.138. Nothing in Plaintiff's lack-of-oversight allegations comes near describing "intentional misconduct, fraud, or a knowing violation of law."

In addition, even under Delaware law, where the courts have recognized a failure-of-oversight claim -- known as a Caremark claim -- it is called "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In Caremark Int'l Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996); see generally Ferre, 2007 U.S. Dist. LEXIS 29490, at *23. Only a "sustained or systemic failure of the board to exercise oversight -- such as an utter failure to attempt to assure a reasonable information and reporting system exists -- will establish the lack of good faith that is a necessary condition to liability."

<u>Caremark Int'l Derivative Litig.</u>, 698 A.2d at 971; <u>see also</u> <u>In re IAC/Interactivecorp Sec. Litig.</u>, 478 F. Supp. 2d at 605; <u>Ferre</u>, 2007 U.S. Dist. LEXIS 29490, at *23-24.

Here, plaintiff fails to allege even a *possibility* of liability against the Tarragon directors for oversight failure, much less the requisite *substantial likelihood* of liability. Plaintiff avers, not particularized facts, but a string of conclusory, unsubstantiated allegations that the board "allowed a culture to persist at Tarragon that placed profits before fiduciary duties" and was "on notice of serious issues concerning the performance of the Company's products and the blatancy of the accounting violations and misrepresentations." (Am. Compl. ¶¶ 129-130). See <u>Jones</u>, 503 F. Supp. 2d at 1337 ("It would be difficult to find a more general or conclusory pleading than director liability based on failing to set a proper 'tone at the top.'"); <u>Seminaris</u>, 662 A.2d at 1355 (conclusory allegation that directors "looked the other way" insufficient to show "egregious conduct" necessary for "substantial likelihood of liability"). But Plaintiff fails to aver any *facts* showing how the Director Defendants allegedly allowed such a culture to persist, how they were on notice of issues, or of which specific issues they were allegedly on notice. See <u>IAC/Interactivecorp Sec. Litig.</u>, 478 F. Supp. 2d at 606; <u>Guttman</u>, 823 A.2d at 507 (demand not excused where "complaint does not plead a single fact suggesting specific red – or even yellow – flags were waved at the outside directors"). Even where a company has restated, demand will not be excused absent "particularized allegations of fact demonstrating that the outside directors had actual or constructive notice of the accounting improprieties." <u>Guttman</u>, 823 A.2d at 495, 498; <u>Kaltman v. Sidhu</u>, No. 3:03-cv-1057-H, 2004 U.S. Dist. LEXIS 2818, at *13 n.2 (N.D. Tex. Feb 26, 2004) (demand not excused despite restatement where no allegations that directors "'exhibited intentional ignorance of or willful blindness to red flags'"). The Amended Complaint makes no such allegations.

Nor does the Amended Complaint contain any particularized allegations of bad faith, such as the directors' "utter failure" to install a system of information and reporting. See In re Discovery Labs. Derivative Litig., 242 F.R.D. 333, 337 (E.D. Pa. 2007); Halpert Enters., 362 F. Supp. 2d at 432. Instead, Plaintiff acknowledges the existence of an audit committee, which had "responsibility for oversight of compliance by Tarragon with applicable laws and regulations" and members with "special skill, knowledge and experience." (Am. Compl. ¶ 126). Plaintiff does not contend that the audit committee did not meet or discharge its intended functions. See Guttman, 823 A.2d at 506-07 (finding demand not excused when "conclusory complaint is empty of the kind of fact pleading that is critical to a Caremark claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that that audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation").

Moreover, only two of the nine directors are Securities Defendants. See id. at 504. And, even for those two directors, there are no specific facts to demonstrate their knowledge of the alleged accounting errors. See id. at 503 (particularized facts must provide directors' "precise" roles at the company, "the information they would receive in those roles, and an[] indication as to why they would have perceived the accounting irregularities").

In sum, demand is not excused, because Plaintiff's conclusory allegations of wrongdoing are unsupported by particularized facts showing a substantial likelihood of liability.

### 2.    The Amended Complaint's Allegations Directed At Individual Directors Are Likewise Insufficient

The Amended Complaint's allegations concerning any individual director are notably scant. It alleges that four of the independent directors (Defendants Schrag, Schafran,

Stark and Davis) were members of the audit aommittee, that four were members of the

compensation committee (Defendants Liebman, Schafran, Schrag and Weisbrod), and that three

were members of the corporate governance and nominating committee (Defendants Schrag,

Schafran and Davis).  Plaintiff further lists stock sales made by "Company insiders," including

six of the directors (Defendants Friedman, Liebman, Schafran, Schrag, Weisbrod, and Davis),

and accuses them of insider trading.  The Amended Complaint also describes financial

transactions involving the Company and Defendants Friedman, Rothenberg, Davis and/or Frary.

These allegations do not establish that any one of these directors were interested, let alone meet

Plaintiff's burden of establishing that five of them were.

### a.    Plaintiffs' Allegations Regarding Committee Membership Fail To Show Interestedness

Mere membership on an audit committee fails to create any doubt regarding a

director's ability to exercise business judgment when presented with a demand.  See Jones, 503

F. Supp. 2d at 1334; Rattner v. Bidzos, No. Civ. A. 19700, 2003 Del. Ch. LEXIS 103, at *13

(Del. Ch. Sept. 30 2003).  Here, Plaintiff alleges that the audit committee members had a

"greater" responsibility to "ferret out fraud and inadequate financial controls" and "special skill,

knowledge and experience."  (Am. Compl. ¶¶ 123, 126).  Such generic allegations regarding

responsibilities and skill are a far cry from particularized facts showing that audit committee

members knowingly were responsible for internal control deficiencies or accounting errors.  See

In re Computer Sciences Corp. Derivative Litig., 244 F.R.D. 580, 589 (C.D. Cal. 2007)

(applying Nevada law); Guttman, 823 A.2d at 507.  Plaintiff's only specific allegation against

the audit committee is that, for one of the two-and-one-half years at issue, namely, 2005, the

audit committee "met a mere five times."  (Am. Compl. ¶ 123).  But, meeting five times in one

year does not show that the audit committee failed to meet or devoted patently inadequate time to its duties.  See Guttman, 823 A.2d at 506-07.

Plaintiff's allegations regarding the compensation committee are similarly lacking.  Indeed, all Plaintiff says is that the compensation committee "approved compensation plans for directors and executives which included millions of dollars which have not been re-sought since the information that the Company's financial results were grossly inflated became known" and met twice in 2005.  (Am. Compl. ¶ 127).  These allegations fail to particularize which directors and executives made which amounts of money that depended upon financial results or explain why the restatements would provide a justification for reclaiming that money.  Plaintiff also does not articulate why any compensation committee would be expected to meet more than twice in one year.  The allegations provide no basis on which to find that the committee members are likely liable for Plaintiff's breach of fiduciary duty or contribution claims.  See In re Pozen Shareholders Litig., Nos. 04 CVS 1540, 04 CVS 1542, 2005 NCBC LEXIS 7, at *26-27 (N.C. Sup. Ct. Nov. 11, 2005) (demand futility not pled where derivative plaintiff "fail[s] to tie [committee] duties, or any failure to uphold them, to any of the misconduct which is the basis of [the] complaint").

Plaintiff's allegations regarding the members of the corporate governance and nominating committee fail for the same reasons.  He alleges only that the committee met once in 2005 and oversaw the recommendation of directors and effectiveness of corporate governance guidelines.  (Am. Compl. ¶ 128).  Plaintiff does not explain what the members of the committee allegedly did wrong or how any alleged wrongdoing relates to his allegations.

In sum, Plaintiff's conclusory allegations regarding board committee memberships do not satisfy the legal standards for establishing demand futility.

**b.**     **Plaintiffs' Allegations Regarding Stock Sales And Other Miscellaneous Allegations Of Financial Interest Do Not Establish Demand Futility**

Without explaining how they allegedly relate to futility, Plaintiff forwards the following miscellaneous assertions regarding financial interests of certain directors:

- Defendant Friedman made a line of credit available to the Company (Am. Compl., ¶ 135);

- Many of Friedman's shares in the Company were sold as a result of margin calls in August 2007 (id., ¶ 137);

- Defendants Frary and Rothenberg were members of the limited partner in Ansonia, and Frary invested in two other Tarragon-formed investment vehicles and received distributions therefrom (id., ¶¶ 138-144);

- Defendant Davis is the sole shareholder of a company that received "thousands of dollars in fees" for performing management services for several properties owned by the Company (id., ¶ 146); and

- "Company insiders" sold 4,154,651 shares of the Company's stock at allegedly inflated prices (id., ¶ 151).

These allegations falls far short of meeting the demand-futility pleading requirements.

To begin, Plaintiff provides no basis on which to conclude that the miscellaneous transactions between the Company, Friedman, Rothenberg, Frary and Davis made them interested in a demand. After all, it is not as if the Plaintiff alleges impropriety in these transactions. Instead, Plaintiff alleges a breach of duty in failing to prevent a securities fraud. See Jones, 503 F. Supp. 2d at 1339; Fink, 2005 U.S. Dist. LEXIS 20659, at *12-13 (generalized allegations of connections in complaint which do not include allegations as to how connections would likely impede board members' ability to assess independently demand for corrective action are insufficient to create doubt that majority of board was disinterested). In any event, these transactions involve only four directors and not a majority of the board.

Likewise, Plaintiff's conclusory allegation that some directors sold stock while in possession of material non-public information fails to establish demand futility.  See IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d at 603.  As the Delaware Chancery Court stated in Guttman, "it is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information."  Guttman, 823 A.2d at 502; see also McCall v. Scott, 239 F.3d 808, 825, amended in other parts, 250 F.3d 997 (6th Cir. 2001); In re Sagent Tech. Derivative Litig., 278 F. Supp.2d. 1079, 1089 (N.D. Cal. 2003) ("bare allegations of stock sales are insufficient, because the trading of stock is not in itself improper").  A plaintiff must plead particularized facts from which one can infer that the director knew material, non-public information when he engaged in material trading activity that deviated from normal trading patterns.  See IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d at 604; Ferre, 2007 U.S. Dist. LEXIS 29490, at *15-16.  Plaintiff has failed to do that here.

Instead, Plaintiff simply lists stock sales on a chart, and alleges in a conclusory fashion that the sellers possessed material non-public information because they were aware of the other allegations of his Amended Complaint.  (Am. Compl. ¶¶ 151, 160-164).  Plaintiff does not allege with specificity what precise information each seller possessed, or when or how the seller came into that knowledge as compared to the timing of his sales.  See Jones, 503 F. Supp. 2d at 1338-39 (allegations that defendants had access to material, non-public information because they attended meetings, had access to internal documents and conversations with employees insufficient, because did not "provide any particularized information about the internal corporate documents . . . allegedly reviewed, details of the conversations they had with other corporate officers, or what information was discussed at the Board meetings they

attended"). Nor does Plaintiff describe the circumstances of the sales or explain how the sales could be viewed as unusual or suspect. See Jones, 503 F. Supp. 2d at 1339 (demand not excused where plaintiff did not allege "any unusual trading patterns or particularly suspicious timing of the sales"); Rattner, 2003 U.S. Dist. LEXIS 103, at *34 .

Some of the persons listed on the sales chart are not directors, so their sales are irrelevant to the question of demand futility. Moreover, of the nine directors, three – Defendants Rothenberg, Frary, and Stark – are not alleged to have sold any stock. For the alleged sales by the other six, Plaintiff provides no basis for finding them "suspicious" or indicative of any liability for either insider trading or securities fraud.

For example, Mr. Schafran is alleged to have sold 25,500 shares in May 2005. (Am. Compl. ¶ 151). But, a review of the Form 4 reveals that the sale was inadvertent, and *Mr. Schafran repurchased the same amount that same day*. (See Foudy Decl., Exh. E (Form 4 filed May 18, 2005)). Thus, for all practical intents and purposes, *Mr. Schafran sold no Tarragon stock* during the relevant period.

Mr. Friedman's wife is alleged to have sold 25,000 shares in June 2005. (Am. Compl., ¶ 151). According to the Form 4, however, this disposition was actually a charitable gift and represented less than .01% of the Friedmans' total holdings. (See Foudy Decl., Exh. F (Form 4 filed June 28, 2005)).

Mr. Schrag is alleged to have sold 887 shares in February 2005 and 1000 shares in June 2005 for total proceeds of $43,040. (Am. Compl. ¶ 151). Plaintiff does not explain why either the timing or the amount of these sales is significant. As of March 30, 2007, Mr. Schrag still owned 217,275 shares of stock and 4,000 vested options, in addition to 58,611 shares of stock owned indirectly. (See Foudy Decl., Exh. G (Proxy Statement filed June 21, 2007)).

Thus, his sales of 1,887 shares represented less than 1% of his total holdings during the relevant period.

Mr. Davis is alleged to have sold 1720 shares in December 2005 for proceeds of $37,461. (Am. Compl. ¶ 151). Plaintiff does not explain why a single sale for such an amount is significant. As of March 30, 2007, Mr. Davis still owned 45,879 shares and 4,000 vested options. (See Foudy Decl., Exh. G). Thus, his sale of 1,720 shares represented only approximately 3% of his holdings.

Mr. Weisbrod is alleged to have sold 2,000 shares in May 2006, 3500 shares in September 2005, 3500 shares in May 2005, and 4000 shares in March 2005 for total proceeds of $288,120. (Am. Compl. ¶ 151). Thus, his sales were at regular intervals and, as of March 30, 2007, he still owned 34,966 shares of stock and 49,686 vested options. (See Foudy Decl., Exh. G). Thus, his sales represented only approximately 13% of his total holdings during the period.

Mr. Liebman is alleged to have sold 4200 shares in September 2005, 2000 shares in August 2005, and 7000 in May 2005 for total proceeds of $273,800. (Am. Compl. ¶ 151). But, as of March 30, 2007, Mr. Liebman still owned 35,224 shares of stock and 49,686 vested options. (See Foudy Decl., Exh. G). Thus, his sales of 13,200 shares represented only approximately 13% of his total holdings during the relevant period. See Guttman, 823 A.2d at 504-05 (dismissing complaint for failure to make demand and noting that sales of 32%, 20%, and 10% of total holdings by three directors were not sales of a "substantial portion of" total holdings).

Thus, none of the stock sales was unusual and Plaintiff has pled no facts suggesting that they were significant or that the sellers were in possession of non-public

material information at the time of the sales. They thus provide no basis on which to find that the majority of the board was interested and incapable of impartially considering a demand.

*     *     *

In conclusion, Plaintiff's allegations amount to conclusory assertions that the directors must have been responsible for the alleged securities fraud simply because they were directors and six allegedly sold stock. Plaintiff fails to allege *facts* that would show a substantial likelihood of liability for even one, much less five, of the directors. As a result, his Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 23.1.

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM

The Amended Complaint should be dismissed, because it fails to plead the elements of an actionable claim.

### A.    Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty

For much the same reasons that the Amended Complaint fails to plead the "substantial likelihood" of liability necessary to excuse demand, it fails to state a claim for breach of fiduciary duty. As noted, under Section 78.138 of the Nevada Revised Statutes, directors and officers may be found personally liable only for a breach of fiduciary duty that involved "intentional misconduct, fraud, or a knowing violation of law." See also Shoen, 137 P.3d at 1184.[6] Plaintiff's factual allegations come nowhere near making out "intentional misconduct, fraud, or a knowing violation of law."

Plaintiff does not allege facts showing any knowledge of, or participation in, alleged wrongdoing by any specific director. Plaintiff's conclusory claim is that the directors

---

[6] Because Tarragon is incorporated in Nevada, Nevada law governs the breach of fiduciary duty claim. See Tepper v. Bendell, 2002 U.S. Dist. LEXIS 23303, at *14 (S.D.N.Y. 2002).

20

permitted certain Tarragon officers to engage in an alleged accounting fraud. (See Am. Compl.
¶¶ 153, 157, 158). But, instead of supporting that claim with underlying facts, Plaintiff merely
points to the directors' positions and asserts without foundation that they were aware of
accounting problems and did not implement adequate internal controls. (See id. ¶¶ 122, 153).

Plaintiff fares no better with his boilerplate allegations regarding the directors'
alleged lack of oversight -- a Caremark claim. Even assuming arguendo that Nevada courts
would recognize such a claim, "only a sustained or systematic failure of the board to exercise
oversight . . . will establish the lack of good faith that is a necessary condition to liability."
Caremark, 698 A.2d at 971; see also Guttman, 823 A.2d at 506-07. Because Caremark
"premises liability on a showing that the directors were conscious of the fact that they were not
doing their jobs," Guttman, 823 A.2d at 506, a necessary predicate of a claim is "subjective bad
faith." Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 798 n. 80 (Del. Ch. 2004);
see also IAC/Interactivecorp Sec. Litig., 478 F. Supp. 2d at 605.

Here, again, the Amended Complaint is devoid of facts showing the necessary
"subjective bad faith" to plead a Caremark claim, "such as contentions that the company lacked
an audit committee, that the company had an audit committee that met only sporadically and
devoted patently inadequate time to its work, or that the audit committee had clear notice of
serious accounting irregularities and simply chose to ignore them or, even worse, to encourage
their continuation." Guttman, 823 A.2d at 507. Plaintiff merely alleges in generic terms that
the directors failed to implement adequate internal controls or supervision. (See Am. Compl. ¶¶
153, 158). He never alleges, however, what proper procedures should have been employed,
how the existing procedures failed, or how the directors could have prevented the alleged
wrongdoing. See Guttman, 823 A.2d at 498-99.

In sum, Plaintiff's allegations fail to state a claim for breach of fiduciary duty as a matter of law, because he fails to plead facts showing "intentional misconduct, fraud or a knowing violation of law." Nev. Rev. Stat. § 78.138.

**B.    Plaintiff Fails To State A Claim For Insider Trading**

For the same reasons that Plaintiff's stock sale allegations fail to raise a "substantial likelihood" of liability, they fail to state a claim for breach of fiduciary duty by insider trading.  As noted, Plaintiff's allegation that Defendants possessed adverse material, non-public information when they sold is entirely conclusory.  Plaintiff does not particularize what information the sellers allegedly had, when they learned it, nor how it related to their sales. For that matter, as explained at pp. 17-20, supra, for the six directors who sold stock, Plaintiff does not show that the sales were at all unusual.

In addition, of the two non-director Defendants, Ms. Pickens sold no stock, and Mr. Rohdie is alleged to have sold 1,000 shares in July 2005 and 3700 shares in June 2007 for total proceeds of $64,050.  (Am. Compl. ¶ 151).  As with all the stock sale allegations, Plaintiff does not explain why Mr. Rohdie's sales should be viewed as unusual or what alleged adverse, material, non-public information he possessed at the time of the sales or how it came into his possession.  Moreover, as of March 30, 2007, he had owned directly or indirectly 874,242 shares of stock and 253,500 vested options.  (See Foudy Decl., Exh. G).  Thus, his alleged sales of 4700 shares represented less than 1% of his total holdings.  See In re Oracle Corp. Derivative Litig., 867 A.2d 904, 955 (Del. Ch. 2004) (insider's sales of 2% of his holdings were insufficient to establish a breach of fiduciary duty based on insider trading).

C.    **Plaintiff Fails To State A Claim For Contribution**

For Plaintiff's second claim for relief, he alleges that, to the extent Tarragon is found liable in the Securities Litigation, Tarragon is entitled to contribution from Defendants. (Am. Compl. ¶¶ 165-167). However, because the Amended Complaint fails to plead adequately a section 10(b) claim against Defendants, Plaintiff's contribution claim fails as a matter of law.

Federal law recognizes that those who are found jointly and severally liable for a violation of section 10(b) are entitled to seek contribution from others jointly liable for the violation. See Musick, Peeler & Garrett v. Employers Ins. Of Wausau, 508 U.S. 286 (1993); In re MTC Elec. Techs. Shareholders Litig., No. 93-CV-876, M.D.L. 1059, 1998 U.S. Dist. LEXIS 23502, at *6 (E.D.N.Y. 1998). However, to state such a contribution claim, Plaintiff must sufficiently plead that Defendants are liable for a section 10(b) violation. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., No. 92 Civ. 6879(CSH), 1998 U.S. Dist. LEXIS 14766, at *8 (S.D.N.Y. Sept. 22, 1998); see also Steed Fin. LDC v. Laser Advisers, Inc., 258 F. Supp. 2d 272, 277 (S.D.N.Y. 2003). This the Complaint utterly fails to do.

"[T]o state a claim for contribution under § 10(b), scienter must be properly alleged." Steed Fin. LDC, 258 F. Supp. 2d at 278; see also Advanced Magnetics, Inc., 1998 U.S. Dist. LEXIS 14766, at *2. The PSLRA has heightened requirements for pleading scienter, requiring the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78-4(b)(2); see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2510 (2007). In the Second Circuit, a plaintiff may establish a strong inference of scienter "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial

evidence of conscious misbehavior or recklessness." <u>ATSI Comms., Inc. v. Shaar Fund, Ltd.,</u> 493 F.3d 87, 99 (2d Cir. 2007).  The Amended Complaint here does neither.

Plaintiff makes no attempt at pleading strong circumstantial evidence of conscious misbehavior or recklessness.  He does not plead any circumstances that would give rise to a strong inference that any Defendant had knowledge that any public statement by Tarragon was false when made.  Merely being directors and officers of a company and thus presumably in possession of general knowledge of corporate affairs is not sufficient.  <u>See</u> <u>Acito</u> <u>v. IMCERA Group, Inc.,</u> 47 F.3d 47, 53 (2d Cir. 1995).

Nor does Plaintiff allege that any Defendant had a motive to commit fraud. Although he lists stock sales by six of the Director Defendants and one of the non-director Defendants, as explained in Argument Sections I.B.2.b. and II.B., <u>supra</u>, none of those sales were suspiciously indicative of a securities fraud.  <u>See, e.g.,</u> <u>Rothman v. Gregor</u>, 220 F.3d at 94-95 (2d Cir. 2000) ($20 million profit not unusual where sales were only 9.3% of holdings); <u>Acito</u>, 47 F.3d at 54 (sale of 11% of holdings did not give rise to inference of scienter); <u>Amalgamated Bank v. Yost</u>, No. 04-0972 (WHY), 2005 U.S. Dist. LEXIS 1280, at *45 (E.D. Pa. Jan. 31, 2005) (sales of 32.7%, 21.1%, 14.4% and 6.9% of total holdings not suspect).

In sum, because Plaintiff fails to plead that Defendants would be liable for a violation of section 10(b), his contribution claim fails as a matter of law.

**D.     <u>The Amended Complaint Should Be Dismissed Because It Is Not Ripe</u>**

Plaintiff's theory of damages is that the Company "has been the subject of securities fraud class action lawsuits by allegedly defrauded investors, has lost market share, has had its reputation in the business community tarnished and has thus been damaged."  (Am. Compl. ¶ 159).  It is well settled, however, that the speculative claims that a corporation might

someday have to pay damages in a pending suit or has suffered reputational injury from a lawsuit are not actionable harms.  See Pall v. KPMG, No. 3:03-00842 (AWT), 2006 U.S. Dist. LEXIS 71821, at *2-3 (D. Conn. Sept. 29, 2006) (dismissing on ripeness grounds derivative suit seeking contribution for potential liability in pending securities fraud class action); In re United Telecomm., Inc. Sec. Litig., No. 90-2251-EEO, 1993 U.S. Dist. LEXIS 4749, at *11 (D. Kan. Mar. 4, 1993) (same); see also In re Cray Inc. Derivative Litig., 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) (dismissing as speculative derivative claims based upon costs of defending class actions and loss of goodwill and reputation); In re Symbol Techs. Sec. Litig., 762 F. Supp. 510, 517 (E.D.N.Y. 1991) (same).  Unless and until Tarragon becomes liable for a judgment or settlement of the Securities Litigation, the Amended Complaint is not ripe for adjudication and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated:  New York, New York
March 7, 2008

Respectfully submitted,

CURTIS, MALLET-PREVOST,
    COLT & MOSLE, LLP

By: _____
    Eliot Lauer
    Theresa Foudy
    Daniel Marcus
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000
*Attorneys for Defendants*

4398818v2